Robert A. Simon
Texas Bar No. 18390000
**WHITAKER CHALK SWINDLE
& SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: (817) 878-0501
rsimon@whitakerchalk.com
**Counsel for Defendants,
Joseph Goodman and Jason Goodman**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **GOODMAN NETWORKS, INC.,** | § | **Case No. 22-31641-mv1-7** |
| | § | **Chapter 7** |
| Debtor. | § | |

| | | |
|---|---|---|
| **SCOT M. SEIDEL, TRUSTEE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | **ADVERSARY PROCEEDING** |
| **JAMES FRINZI, JAMES GOODMAN,** | § | **CASE NO. 24-03039-mvl** |
| **JASON GOODMAN and** | § | |
| **JOSEPH GOODMAN,** | § | |
| | § | |
| Defendants. | § | |

## JASON GOODMAN'S AND JOSEPH GOODMAN'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE MICHELLE V. LARSON,
UNITED STATES BANKRUPTCY JUDGE**:

Defendants, Jason Goodman and Joseph Goodman ("Jason/Joseph"), file this their Answer

and Affirmative Defense ("Answer") in response to Plaintiff's Original Complaint (the

"Complaint") filed by Scott M. Seidel, Trustee for Goodman Networks, Inc. (the "Trustee" or

"Plaintiff") and would respectfully show unto the Court as follows:

# ANSWER

## I.

## INTRODUCTION

1.      Jason/Joseph admit that the Goodman Networks emerged from bankruptcy in 2017. Jason/Joseph denies remaining allegations in Paragraph 1 of the Complaint.

## II.

## JURISDICTION, AUTHORITY AND VENUE

2.      Jason/Joseph admit that the Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334.  Jason/Joseph deny this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).   There are *"Stern v. Marshall"* issues in this case, in that the Trustee asserts state law tort claims against non-debtors who have not asserted claims against the estate.  The Trustee's claims are not counterclaims to any claims asserted by Jason/Joseph and are not part of the Chapter 7 claims allowance process.   There is no basis for bankruptcy jurisdiction other than the coincidental fact that the Trustee represents the bankruptcy estate of a corporation rather than the corporation itself.  Jason/Joseph are entitled to have this matter decided by an Article III Court, and a jury if so choose. This Court lacks Constitutional authority to enter a final judgment.

3.      Jason/Joseph do not consent to this Court's entry of a final judgment.

4.      Jason/Joseph admit that venue for the Adversary Proceeding is proper in the Northern District of Texas, subject to the Constitutional limitations that prevent this Court from entering a final judgment.

## III.

## PARTIES

5.      Jason/Joseph admit the allegations in Paragraph 5 of the Complaint.

6.      Jason/Joseph admit the allegation in the first sentence of Paragraph 6 of the Complaint.  Jason/Joseph lack sufficient knowledge to admit or deny where James Frinzi may be served with process or found.

7.      Jason/Joseph admit the allegation in the first sentence of Paragraph 7 of the Complaint.  Jason/Joseph lack sufficient knowledge to admit or deny where James Goodman may be served with process or found.

8.      Jason/Joseph admit the allegations in Paragraph 8 of the Complaint.

9.      Jason/Joseph admit the allegations in Paragraph 9 of the Complaint

10.      Jason/Joseph admit the allegations in the first sentence of Paragraph 10 of the Complaint.  Jason/Joseph lack sufficient information to admit or deny when other people served on the Board of Directors or in what capacity.

11.      Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 11 of the Complaint.

12.      Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 12 of the Complaint.

13.      Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 13 of the Complaint.

14.      Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 14 of the Complaint.

15.      Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 15 of the Complaint.

16.      Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 16 of the Complaint.

17.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 17 of the Complaint.

18.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 18 of the Complaint, except that Jason/Joseph admit the allegations in the last sentence of Paragraph 18.

19.     Jason/Joseph admit the allegations in Paragraph 19 of the Complaint.

20.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 20 of the Complaint.

21.     Jason/Joseph admit the allegations in Paragraph 21 of the Complaint.

## IV.

## FACTUAL BACKGROUIND

22.     Jason/Joseph admit the allegation in Paragraph 22 of the Complaint.

23.     Jason/Joseph admit the allegations in Paragraph 23 of the Complaint.

24.     Jason/Joseph admit the allegations in Paragraph 24 of the Complaint.

25.     Jason/Joseph admit the allegations in Paragraph 25 of the Complaint.

**A.     The Goodman Brothers controlled and indirectly owned
        Goodman Networks through a web of entities.[1]**

26.     Jason/Joseph admit that they are brothers, along with James, John, and Jonathan. Jason/Joseph lack sufficient information to admit or deny the other allegations in Paragraph 26 of the Complaint.

27.     Jason/Jospeh lack sufficient information to admit or deny what interests other people own in Goodman MBE Group, LP.

---

[1] Jason/Joseph use the Trustee's headings and subheadings in the Complaint for clarity and convenience. Such usage is not an admission that the Trustee's subheadings are true or accurately describe any facts.

28.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 28 of the Complaint.

29.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 29 of the Complaint.

30.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 30 of the Complaint.

31.     Jason/Joseph admit that they are Hispanic, and Goodman Networks is qualified as a minority owned business.

**B.    The Debtor emerged from a 2017 bankruptcy with new corporate rules
and procedures designed to protect the Debtor and its creditors**.

32.     Jason/Joseph admit the allegations in Paragraph 32 of the Complaint.

33.     Jason/Jason admit the allegations in Paragraph 33 of the Complaint.

34.     Jason/Joseph admit that, as part of its reorganization, Goodman Networks executed the Sixth Amended and Restated Shareholders' Agreement (the "2017 Shareholders Agreement"), filed its Third Amended and Restated Certificate of Formation (the "2017 Certificate of Formation"), and adopted its Third Amended and Restated Bylaws (the "2017 Bylaws," and collectively, the "2017 Corporate Documents").

35.     The 2017 Corporate Documents speak for themselves, and Jason/Joseph need not admit or deny their contents. Jason/Joseph generally admit that the 2017 Corporate Documents outlined governance matters. Jason/Joseph deny that the 2017 Bylaws necessarily required Goodman Networks to have at least three directors and no more than five directors on its board of directors at any given time.

36.     The 2017 Bylaws speak for themselves, and Jason/Joseph need not admit or deny their contents. Jason/Joseph admit that the 2017 Bylaws provide that "each director shall hold

office until such director's successor shall have been duly elected and qualified or until such

director's earlier death, resignation or removal as provided by the Shareholders Agreement."

37.     The 2017 Shareholders Agreement speaks for itself, and Jason/Joseph need not

admit or deny its contents.  Jason/Joseph do not have a copy of the 2017 Shareholders Agreement

and lack sufficient knowledge to admit or deny whether it required Goodman Networks to keep

five directors on its board of directors as long as the Notes and Preferred Shares were outstanding.

38.     Jason/Joseph admit that the 2017 Bylaws contain the following language, though

the quoted language is selected out of the middle of a paragraph and taken out of its context:

Vacancies may be filled by (a) the affirmative vote of the holders of not less than a majority of the
total voting power of all issued and outstanding common stock, (b) a majority of the directors then
in office (although less than a quorum) or (c) the sole remaining director. Each director so elected
shall hold office for a term expiring at the annual meeting of shareholders at which the term of
office of the class to which they have been chosen expires or until such director's successor shall
have been duly elected and qualified. If there are no directors in office, then an election of directors
may be held in accordance with the TBOC. Unless otherwise provided in the Certificate of
Formation and subject to the terms of the Shareholders Agreement, when one or more directors
shall resign from the Board effective at a future date, a majority of the directors then in office,
shall have the power to fill such vacancy or vacancies.

Jason/Joseph deny that the selection accurately captures all of the meaning of the entire document.

39.     Jason/Joseph need not admit or deny the allegations in Paragraph 39 of the

Complaint, which are a legal conclusion.  Jason/Jason lack sufficient information to admit or deny

whether this asserted legal conclusion is correct.

40.     Jason/Joseph admit that, as of May 26, 2017, the Debtor's Board of Directors was

comprised of five directors: John Goodman as Chairman, Jason Goodman, and three others—

Sherman Edmiston, Mark Keiffer, and Rocco Romanella.

**C.     The Debtor completed an insider transaction
        to acquire its two major VAR customers.**

41.     The allegation in Paragraph 41 of the Complaint is a subjective opinion, which

Jason/Joseph need not admit or deny.  Due to the inherent subjectivity of the statement, and its

vagueness as to the time period, Jason/Joseph deny that Goodman Networks struggled to grow revenue after emerging from bankruptcy.

42.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 42 of the Complaint.

43.     Jason/Joseph admit the allegations in Paragraph 43 of the Complaint.

44.     Jason/Joseph admit the allegations in Paragraph 44 of the Complaint.

45.     Jason/Joseph admit the allegations in Paragraph 45 of the Complaint.

46.     Jason/Joseph admit the allegations in Paragraph 46 of the Complaint.

47.     Jason/Joseph admit the allegations in Paragraph 47 of the Complaint.

48.     Jason/Joseph admit the allegations in Paragraph 48 of the Complaint.

49.     Jason/Joseph admit the allegations in Paragraph 49 of the Complaint.

**D.     The Debtor completed an insider transaction to
        divest its infrastructure and professional services division.**

50.     Jason/Joseph lack sufficient information to admit or deny the allegations in first sentence of Paragraph 50 of the Complaint.  Furthermore, the allegations are a matter of opinion, rather than fact, and no admission or denial is required.  Jason/Jason lacks sufficient information to admit or deny the second sentence of Paragraph 50 of the Complaint.

51.     Jason/Joseph admit the allegations in Paragraph 51 of the Complaint.

52.     Jason/Joseph admit the allegations in Paragraph 52 of the Complaint.

53.     Jason/Joseph admit the allegations in Paragraph 53 of the Complaint.

54.     Jason/Joseph admit the allegations in Paragraph 54 of the Complaint.

55.     Jason/Joseph lack sufficient information to admit or deny allegations in Paragraph 55 of the Complaint.

56.     Jason/Joseph admit the allegations in Paragraph 56 of the Complaint.

57.     Jason/Joseph admit the allegations in Paragraph 57 of the Complaint.

58.     Jason/Joseph admit the allegations in Paragraph 58 of the Complaint.

**E.      The Debtor continued to struggle financially**.

59.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 59 of the Complaint.

60.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 60 of the Complaint.  Furthermore, and more specifically, Jason/Joseph lack sufficient information to know James Goodman's state of mind on May 31, 2022.

61.     Jason/Joseph admit the allegations in Paragraph 61 of the Complaint, except that they lack sufficient information to admit or deny when James Frinzi was first employed by Goodman Networks.

62.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 62 of the Complaint.

63.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 63 of the Complaint.

64.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 64 of the Complaint.

**F.      The Debtor completed an insider transaction to divest its e-commerce business.**

65.     Jason/Joseph admit the allegations in the first sentence of Paragraph 65 of the Complaint.  Jason/Joseph deny that Jake Goodman is their brother.  Jason/Joseph lacks sufficient information to admit or deny whether there were any open positions on the Board of Directors at the time.  Furthermore, whether the 2017 Corporate Documents required the appointment of an additional director is a legal conclusion that need not be admitted or denied.

66.     Jason/Joseph admit the allegations in Paragraph 66 of the Complaint.

67.      Jason/Joseph admit the allegations in Paragraph 67 of the Complaint.

68.      Jason/Joseph admit the allegations in Paragraph 68 of the Complaint.

69.      Jason/Joseph admit the allegations in Paragraph 69 of the Complaint.

70.      Jason/Joseph admit the allegations in Paragraph 70 of the Complaint.

71.      Jason/Joseph admit the allegations in Paragraph 71 of the Complaint.

72.      Jason/Joseph admit the allegations in the first two sentences of Paragraph 72 of the

Complaint.  Jason/Joseph need not admit or deny how many directors the Board should have had

under the 2017 Corporate Documents.  Jason/Joseph lack sufficient information to admit or deny

whether any efforts were made to find additional directors, but any such effort likely would have

been futile due to the condition of Goodman Networks at the time.

**G.      James Goodman and Frinzi plan to strip GNET from the Debtor by
         acquiring it through a new holding company that they would form and own.**

73.      Jason/Joseph lack sufficient information to admit or deny the allegations in

Paragraph 73 of Complaint.

74.      Jason/Joseph generally admit the allegations in Paragraph 74 of the Complaint,

except that the word "material" is subjective.  Goodman Network also received some revenue from

another company.

75.      Jason/Joseph lack sufficient information to admit or deny the allegations in the first

sentence of Paragraph 75 of the Complaint.  Jason/Joseph admit that James Goodman presented a

few proposed transactions to Goodman Networks' advisors.

76.      Jason/Joseph lack sufficient information to admit or deny the allegations in

Paragraph 76 of the Complaint.

77.      Jason/Joseph lack sufficient information to admit or deny the allegations in

Paragraph 77 of the Complaint.

78.    The allegations in Paragraph 78 of the Complaint are a matter of opinion that need not be admitted or denied.

79.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 79 of the Complaint.

80.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 80 of the Complaint.

81.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 81 of the Complaint.

82.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 82 of the Complaint.  Jason/Joseph admit that AT&T and Arris filed suit against Goodman Networks and GNET to recover the alleged balance owed by Goodman Networks. Jason/Joseph lack sufficient information to admit or deny the precise amount owed.

83.    Jason/Joseph admit the allegations in Paragraph 83 of the Complaint.

84.    Jason/Joseph deny the allegations in Paragraph 84 of the Complaint.

**H.    Without following its corporate governance procedures, the Debtor loaned an undercapitalized entity owned and controlled by James Goodman about $6 million.**

85.    Jason/Joseph lack sufficient information to admit or deny the first sentence of Paragraph 85 of the Complaint.  Jason/Joseph admit that James Goodman is affiliated with UFS.

86.    Jason/Joseph admit that: (1) UFS existed for less than a year and lacked historical financial data; (2) Goodman Networks paid $5,986,898 of UFS's expenses from June to September 2021; and (3) in exchange for UFS's promise to repay Goodman Networks.  Jason/Joseph deny that the payments were "negligent."  Jason/Joseph deny that Goodman Networks took no action to get UFS to repay this obligation.

87.    Jason/Joseph admit the allegations in Paragraph 87 of the Complaint.

88.    Jason/Joseph admit the allegations in Paragraph 88 of the Complaint.

89.    Jason/Joseph lack sufficient information to admit or deny whether a promissory note was ever signed or what records the Trustee has.  Jason/Joseph resigned from the Board of Directors on October 18, 2021, and October 22, 2021, respectively.  Jason/Joseph lack sufficient information to admit or deny what the Board of Directors did after their resignations.

90.    Jason/Joseph lacks sufficient information to admit or deny what records the Trustee has.  Jason/Joseph admit that no special committee was appointed to examine the payment of UFS expenses before their respective resignations.  Jason/Joseph lack sufficient information to admit or deny what happened after their respective resignations from the Board.  Joseph admits that he became aware of the payments made on behalf of UFS, though the issue was not brought to the Board of Directors until approximately October 15, 2021.  Jason/Joseph deny the remaining allegations in Paragraph 90 of the Complaint.

91.    Jason/Joseph deny that Goodman Networks took no action to collect on the obligations owing to it by UFS.  Jason/Joseph lack sufficient information to admit or deny the Trustee's allegations regarding his efforts to collect the debt.

I.    **After voting to appoint Frinzi as the Debtor's CEO, Jason and Joseph Goodman resigned from the board, leaving James Goodman as the sole director.**

92.    Jason/Joseph deny the allegations in Paragraph 92 of the Complaint.

93.    Jason/Joseph deny the allegations in Paragraph 93 of the Complaint.

94.    Jason/Joseph admit that, by October 20, 2021, they were made aware of the UFS loan, which they believed to have been a loan.  Jason/Joseph admit that UFS was an affiliate of James Goodman.    Jason/Joseph admit that no promissory note had yet been executed. Jason/Joseph deny that Goodman Networks was doing nothing to collect on this debt.

95.     Jason/Joseph deny that they were aware of Frinzi's "plan." Jason/Joseph admit that they resigned from Goodman Networks' Board of Directors in October 2021 and that Frinzi was elected as the new CEO of Goodman Networks, GNET ATC, and Multiband.[2] Jason/Joseph deny the remaining allegations in Paragraph 95 of the Complaint.

96.     Jason/Joseph admit that they resigned from the Board of Directors shortly after Frinzi was elected. Jason/Joseph deny the remaining allegations in Paragraph 96 of the Complaint.

97.     Jason/Joseph admit that an email was sent on October 22, 2021, but it is quoted out of context. Jason/Joseph lack sufficient information to admit or deny the substance of the email without seeing it in its full context. Jason/Joseph deny that they did not intend for Goodman Networks to collect the debt owed by UFS, but Jason/Joseph resigned as directors of the company on or about that date and had no further influence on the management of the Goodman Networks.

98.     Jason/Joseph deny the allegations in the first sentence of Paragraph 98 of the Complaint and deny that they had any duty to continue their Board service. Jason/Joseph admit that James Goodman was the sole remaining director after their resignation, though he could have sought the appointment of other directors.

99.     Jason/Joseph deny the allegations in Paragraph 99 of the Complaint.

**J.      While pretending to wind down the Debtor, Frinzi and James Goodman caused the Debtor to accumulate large amounts of cash which they planned to siphon.**

100.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 100 of the Complaint.

101.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 101 of the Complaint.

102.    Jason/Joseph admit the allegations in Paragraph 102 the Complaint.

---

[2] Jason Goodman resigned as CEO on October 1, 2021, and was replaced by Jim Frinzi on that date.

103.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 103 of the Complaint.

104.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 104 of the Complaint.

105.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 105 of the Complaint.

106.    Jason/Joseph admit the allegations in the first sentence of Paragraph 106 of the Complaint.  Jason/Joseph lack sufficient information to admit or deny the allegations in the second sentence of Paragraph 106 of the Complaint.

**K.      Frinzi and James Goodman caused the Debtor to forgive
UFS's almost $6 million debt without consideration.**

107.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 107 of the Complaint.

108.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 107 of the Complaint.

109.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 109 of the Complaint.

110.    Jason/Joseph have no reason to doubt the allegations in Paragraph 110 of the Complaint, but they lack access to their company email accounts and do not have copies. Accordingly, Jason/Joseph lack sufficient information to admit or deny the allegations.

111.     Jason/Joseph have no reason to doubt the allegations in Paragraph 111 of the Complaint, but they lack access to their company email accounts and do not have copies. Accordingly, Jason/Joseph lack sufficient information to admit or deny the allegations.

112.    Jason/Joseph have no reason to doubt the allegations in Paragraph 112 of the Complaint, but they lack access to their company email accounts and do not have copies. Accordingly, Jason/Joseph lack sufficient information to admit or deny the allegations.

113.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 113 of the Complaint.

114.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 114 of the Complaint.

115.    Jason/Joseph admit the allegations in Paragraph 115 of the Complaint.

**L.      Frinzi usurped the Debtor's corporate opportunity to purchase 1Path and AMRR using millions of dollars he syphoned from the Debtors.**

116.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 116 of the Complaint.

117.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 117 of the Complaint.

118.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 118 of the Complaint

119.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 119 of the Complaint.

120.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 120 of the Complaint.

121.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 121 of the Complaint.

122.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 122 of the Complaint

123.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 123 of the Complaint.

124.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 124 of the Complaint.

125.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 115 of the Complaint

126.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 126 of the Complaint.

127.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 127 of the Complaint.

128.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 128 of the Complaint.

**M.      Frinzi siphoned $4.4 million of the Debtor's cash to MGR, his own entity.**

129.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 129 of the Complaint.

130.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 130 of the Complaint.

131.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 131 of the Complaint.

132.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 132 of the Complaint.

**N.**     **The Debtor is forced into bankruptcy.**

133.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 133 of the Complaint.  However, Jason/Joseph deny that they negligently caused or negligently allowed the Debtor to make improper transfers.

| Transfers from the Debtor Negligently Vetted by Directors / Officers ||
| Transferees | Amount Transferred |
| --- | --- |
| UFS | $ 5,986,898 |
| MGR | $ 4,400,000 |
| MGR AMRR | $ 44,500,000 |
| **Total Transferred from the Debtor** | **$ 54,886,898** |

134.     Jason/Joseph admit the allegations in Paragraph 134 of the Complaint.

## V.

## CAUSES OF ACTION

**COUNT 1: BREACH OF FIDUCIARY DUTY – DUTY OF DUE CARE (AGAINST JAMES GOODMAN)**

135.     Jason/Joseph incorporate herein all of their previous admissions, denials, and statements that they lack sufficient information to admit or deny the Trustee's allegations.

136.     Paragraph 136 is a statement of law that Jason/Joseph need not admit or deny.

137.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 137 of the Complaint.

138.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 138 of the Complaint.

139.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 138 of the Complaint.

139.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 139 of the Complaint.

140.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 140 of the Complaint.

## COUNT 2:  BREACH OF FIDUCIARY DUTY – DUTY OF DUE CARE (AGAINST JASON GOODMAN AND JAMES FRINZI)

141.    Paragraph 141 of the Complaint is a statement of law that Jason/Joseph need not admit or deny.

142.    Paragraph 142 of the Complaint is a statement of law that Jason/Joseph need not admit or deny.

143.    Paragraph 143 of the Complaint is a statement of law that Jason/Joseph need not admit or deny.

144.    Jason/Joseph admit the allegations in Paragraph 144 of Complaint.

145.    Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 145 of the Complaint.

146.    Jason/Joseph admit the allegations in Paragraph 146 of the Complaint.

147.    Jason/Joseph deny that Jason breached any duties of care to Goodman Networks during his tenure as an officer.  Jason/Joseph lack sufficient information to admit or deny whether Frinzi breached any duties of care to Goodman Networks.

148.    Jason/Joseph admit the allegations in Paragraph 148 of the Complaint.

149.    Jason/Joseph admit the allegations in Paragraph 149 of the Complaint.  To the best of Jason/Joseph's knowledge, the loan to UFS was not presented to the Board of Goodman Networks until after it had happened.

150.    Jason/Joseph deny the allegations in Paragraph 150 of the Complaint.

151.    Paragraph 151 of the Complaint states opinions and legal conclusions that Jason/Joseph need not admit or deny.

152.     Jason/Joseph need not admit or deny the allegations in Paragraph 152 of the Complaint, which are legal conclusions.

153.     Jason/Joseph deny that Jason's conduct caused any damages to the Debtor. Jason/Joseph express no opinion about the conduct of any other officers or directors.

## COUNT 3: BREACH OF FIDUCIARY DUTY – DUTY OF OBEDIENCE (AGAINST JAMES, JASON, AND JOSEPH GOODMAN)

154.     Jason/Joseph incorporate herein all of their previous admissions, denials, and statements that they lack sufficient information to admit or deny the Trustee's allegations.

155.     Paragraph 155 of the Complaint is a statement of law that Jason/Joseph need not admit or deny.

156.     Jason/Joseph admit the allegations in Paragraph 156 of the Complaint.

157.     Jason/Joseph admit the allegations in Paragraph 157 of the Complaint.

158.     Jason/Joseph admit the allegations in Paragraph 158 of the Complaint.

159.     Jason/Joseph generally admit the allegations in Paragraph 159 of the Complaint, except that the dates of their resignations may be off by a few days.

160.     The allegations in Paragraph 160 of the Complaint are statements of law and legal conclusions that Jason/Joseph need not admit or deny.

161.     Jason/Joseph admit the allegations in the first sentence of Paragraph 161 and deny all other allegations in Paragraph 161.

162.     The allegations in Paragraph 162 of the Complaint are statements of law and legal conclusions that Jason/Joseph need not admit or deny.  However, Jason/Joseph deny that they breached any fiduciary duties to the Debtor.

163.     The allegations in Paragraph 162 of the Complaint are statements of law and legal conclusions that Jason/Joseph need not admit or deny.

164.     Jason/Joseph deny the allegations in Paragraph 164 the Complaint.

165.     Jason/Joseph deny the allegations in Paragraph 165 the Complaint.

166.     Jason/Joseph deny the allegations in Paragraph 166 the Complaint.

167.     Jason/Joseph deny the allegations in Paragraph 164 the Complaint.

## COUNT 4:  BREACH OF FIDUCIARY DUTY – DUTY OF LOYALTY AND DUE CARE FOR RESIGNING IN THE FACE OF CORPORATE WRONGDOING (JASON AND JOSEPH GOODMAN)

168.     Jason/Joseph incorporate herein all of their previous admissions, denials, and statements that they lack sufficient information to admit or deny the Trustee's allegations.

169.     The allegations in Paragraph 169 of the Complaint are statements of law and legal conclusions that Jason/Joseph need not admit or deny.

170.     Jason/Joseph deny the allegations in Paragraph 170 the Complaint.

171.     Jason/Joseph deny the allegations in Paragraph 171 the Complaint.

172.     Jason/Joseph admit that they resigned as directors on or about October 20, 2021, specifically October 18, 2021, and October 22, 2021.  Jason Goodman admits that he resigned as CEO in October 2021, though he believes that the actual date was October 1, 2021, not October 20, 2021.  Jason/Joseph deny that they breached any fiduciary duties by resigning from their respective positions.

173.     Jason/Joseph admit that James Goodman was the Chairman and the sole remaining director upon their resignations from the Board and that Frinzi was the new CEO as Jason Goodman's resignation.

174.     Jason/Joseph deny the allegations in Paragraph 174 of the Complaint.

175.     Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 175 of the Complaint.

176.     Jason/Joseph deny the allegations in Paragraph 176 of the Complaint.

177.   Jason/Joseph deny the allegations in Paragraph 177 of the Complaint.

**COUNT 5:    BREACH OF FIDUCIARY DUTY – DUTY OF LOYALTY AND DUE CARE FOR RESIGNING IN THE FACE OF CORPORATE WRONGDOING (AGAINST JAMES GOODMAN)**

178.   Jason/Joseph incorporate herein all of their previous admissions, denials, and statements that they lack sufficient information to admit or deny the Trustee's allegations.

179.   The allegations in Paragraph 179 of the Complaint are statements of law and legal conclusions that Jason/Joseph need not admit or deny.

180.   Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 180 of the Complaint.

181.   Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 181 of the Complaint.

182.   Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 182 of the Complaint.

183.   Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 183 of the Complaint.

184.   Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 184 of the Complaint.

185.   Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 185 of the Complaint.

186.   Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 186 of the Complaint.

187.   Jason/Joseph lack sufficient information to admit or deny the allegations in Paragraph 187 of the Complaint.

# VI.

## AFFIRMATIVE DEFENSES

188.    Jason/Joseph incorporate herein all of their previous admissions, denials, and statements that they lack sufficient information to admit or deny the Trustee's allegations.

**A.    No Duty to Serve Indefinitely as an Officer or Director**

189.    While Jason/Joseph owed fiduciary duties of care and loyalty *while they served* as officers or directors of Goodman Networks, they had no duty to serve indefinitely.  Board service is voluntary.  So is service as a corporate officer.  Jason/Joseph were free to resign their respective positions at any time and relinquish the benefits and burdens of such service.  The substance of the Trustee's claims is that Jason/Joseph were somehow obligated to continue their service as officers and directors indefinitely until other suitable officers or Board members could be found and agreed to take office and replace them.  There is no such duty.  Jason/Joseph were free to resign at any time and relinquish the voluntary responsibilities they assumed as officers and directors.  There is no lawful basis for holding an officer or a director liable for the bad acts of their successors after they have resigned, unless they participated in those bad acts.  That did not happen here.  The Trustee's Complaint relies upon a non-existent duty.

**B.    No Proximate Cause**

190.    While proof of proximate cause is the Trustee's burden, Jason/Joseph point out that the Complaint fails to explain how their resignations caused Frinzi or James Goodman to breach their fiduciary duties to the Goodman Networks, if they did.  Without that essential element, the Trustee's claims must fail.  Again, a corporate officer or director is not responsibility for the malfeasance, if any, of his successors, unless he participated in it.  That did not happen here.

**C.    Business Judgment Rule**

191.    The Trustee's Complaint rests on the dubious notion that somehow Jason/Joseph were responsible for knowing that Frinzi would loot Goodman Networks long, after they were gone, through transactions that had not yet been proposed to the Board while they were still there. The argument seems to be they should have known.  Based upon what?  There is no allegation, much less any evidence that Frinzi disclosed to Jason/Joseph what he intended to do, or even that he had formed any such intent before Jason/Joseph resigned their positions.  Jason/Joseph resigned their positions, leaving Goodman Networks in the hands of competent executives, with many years of business experience. Their decision to resign was a valid exercise of their business judgment and was protected by the business judgment rule.  Furthermore, their efforts to recover the money lent to UFS were made in good faith, in the belief that those efforts were in the best interests of Goodman Networks at the time.  Those efforts are protected by the business judgment rule even if their judgment turned out to be wrong.

D.    **Proportionate Responsibility**.

191.    The Trustee's Complaint is tort-based.  Accordingly, Jason/Joseph are entitled to the protections of Texas Civil Practice and Remedies Code Section 33.001 *et seq*. which apportions responsibility among alleged tortfeasors and claimants.  Jason/Joseph did not participate in or benefit from the allegedly bad business decisions made by James Goodman and Frinzi that drained Goodman Networks of funds.  Jason/Joseph believe and contend that none of their actions breached any fiduciary duties or proximately caused any injury to Goodman Networks.

192.    However, even taking the Complaint at face value, the primary bad actor was Frinzi, who arranged two (2) transactions that resulted in pre-petition large losses to Goodman Networks.  According to the Complaint, Frinzi bears primary responsibility for those losses, and James Goodman, as the remaining director, bears secondary responsibility for negligently failing

to prevent them.  According to the allegations in the Complaint, James Goodman bears primary

responsibility for the allegedly negligent loan to UFS.  According to the Complaint, Jason/Joseph

bear at most secondary responsibility for failing to prevent James Goodman from making that bad

business decision, which was not presented to the Board beforehand.  Again, taking the Complaint

at face value, Jason/Joseph bear comparatively little responsibility, relative to Frinzi and James

Goodman.  Pursuant to Texas Civil Practice & Remedies Code Section 33.003, Jason/Joseph are

entitled to an allocation of proportionate responsibility along with the individuals primarily

responsible.  The amount of Jason/Joseph's liability, if any, must be reduced to their proportionate

share.  Since their proportionate share, if any, is far less than 50%, Jason/Joseph would be liable

only for their proportion share(s) of damages, if any, and they are <u>not</u> jointly and severally liable,

if they have any liability.  TEX. CIV. PRAC. & REM. CODE §§ 33.012 and 33.013.

## VII.

## <u>REQUESTED RELIEF</u>

WHEREFOR, PREMISES CONSIDERED, Jason/Joseph requests that whichever Court

ultimately decides this action enter final judgment that the Trustee take nothing on his claims again

them.  Furthermore, and in the alternative, Jason/Joseph request that the trier of fact apportioning

responsibility among all defendants pursuant to Texas Civil Practice & Remedies Code Section

33.001 et seq., and that Jason/Joseph be held responsible solely for their proportionate share of

responsibility.  Jason/Joseph further request such other and further relief as may be just and proper.

Dated:  July 11, 2024

Respectfully submitted,

**WHITAKER CHALK SWINDLE
& SCHWARTZ PLLC**

*/s/ Robert A. Simon*
Robert A. Simon
State Bar No. 18390000
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
817.878.0543
817.878.0501 - Fax
rsimon@whitakerchalk.com
**Counsel for Defendants,
Joseph Goodman and Jason Goodman**

## CERTIFICATE OF SERVICE

I hereby certify on this 11th day of July 2024, that I served a true and correct copy of the foregoing Answer upon counsel for Plaintiff, Davor Rukavina via email drukavina@munsch.com and Thomas Berghman via email tberghman@munsch.com and via this Court's ECF notification system.

*/s/ Robert A. Simon*
Robert A. Simon