

FILED
In the Office of the
Secretary of State of Texas
MAY 26 2017
Corporations Section

# THIRD AMENDED AND RESTATED CERTIFICATE OF FORMATION OF GOODMAN NETWORKS INCORPORATED

## ARTICLE ONE

Goodman Networks Incorporated (the "Corporation"), pursuant to the provisions of Sections 10.301 and 10.302 of the Texas Business Organizations Code (the "TBOC"), hereby adopts this Third Amended and Restated Certificate of Formation, which accurately states the text of the Certificate of Formation and all amendments and restatements thereof that are in effect to date and as further amended by this Third Amended and Restated Certificate of Formation as hereinafter set forth, and which contains no other changes in any provision thereof.

## ARTICLE TWO

The name of the Corporation is Goodman Networks Incorporated. The filing entity is a for-profit corporation.

## ARTICLE THREE

The Corporation's existing Certificate of Formation is amended by this Third Amended and Restated Certificate of Formation as follows:

The Third Amended and Restated Certificate of Formation alters or changes Articles II, III, IV, V, VI, VII, VIII, IX, X, XI, XII and XIII to the Certificate of Formation of the Corporation in effect at the time of filing of this Third Amended and Restated Certificate of Formation, and the full text of Articles II, III, IV, V, VI, VII, VIII, IX, X, XI, XII and XIII is as set forth in the Third Amended and Restated Certificate of Formation attached hereto. The Third Amended and Restated Certificate of Formation deletes Article XIV to the Certificate of Formation of the Corporation in effect at the time of filing this Third Amended and Restated Certificate of Formation.

## ARTICLE FOUR

Each amendment made by this Third Amended and Restated Certificate of Formation has been effected in conformity with the provisions of the TBOC, and such Third Amended and Restated Certificate of Formation as so amended was duly approved in the manner required by the TBOC, pursuant to the authority granted under the *Findings of Fact, Conclusions of Law, and Order Approving the Debtors' Disclosure Statement For, and Confirming, the Debtors' Amended Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated May 4, 2017, of the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), in the jointly administered cases under chapter 11 of title 11 of the United States Code under the caption "In re: Goodman Networks Incorporated, et al.", Case No. 17-31575 (MI) (the "Chapter 11 Cases"). The Bankruptcy Court had jurisdiction over the Chapter 11 Cases pursuant to section 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.

## ARTICLE FIVE

The Third Amended and Restated Certificate of Formation, which is attached hereto, accurately states the text of the Certificate of Formation being restated and each amendment to the Certificate of Formation being restated that is in effect, and as further amended by the Third Amended and Restated Certificate of Formation attached hereto. The attached Third Amended and Restated Certificate of

Formation does not contain any other change in the Certificate of Formation being restated except for the information permitted to be omitted by the TBOC applicable to the filing entity.

## ARTICLE SIX

This document becomes effective at 8:00 a.m. on May 31, 2017.

* * *

IN WITNESS WHEREOF, the undersigned has hereunto set his hand to this Third Amended and Restated Certificate of Formation on May 26, 2017.

GOODMAN NETWORKS INCORPORATED

By: /s/ John A. Goodman

Name: John A. Goodman

Title: Executive Chairman, Chief Executive Officer and President

*Signature Page to Third Amended and Restated Certificate of Formation*

05/26/2017 16:04 FAX Case 24-03039-mvl Doc 19-3 Filed 08/07/24 Entered 08/07/24 18:38:59 Desc
Exhibit 3 - Cert of Formation Page 4 of 17

@005

## EXHIBIT A

## THIRD AMENDED AND RESTATED CERTIFICATE OF FORMATION

### ARTICLE ONE

The name of the corporation is Goodman Networks Incorporated (the "Corporation").

### ARTICLE TWO

The address of the registered office of the Corporation is 206 E. 9th Street, Suite 1300, Austin, Texas 78701, and the name of its registered agent at such address is Capitol Corporate Services, Inc.

### ARTICLE THREE

The purpose for which the Corporation is organized is to engage in any lawful business for which corporations may be organized under the Texas Business Organizations Code ("TBOC").

### ARTICLE FOUR

The total number of shares of stock that the Corporation shall have authority to issue is 32,750,000, consisting of 16,500,000 shares of Common Stock, par value $0.0001 per share (the "Common Stock") and 16,250,000 shares of Preferred Stock, par value $0.0001 per share (the "Preferred Stock").

The following is a statement of the designations and the powers, privileges and rights, and the qualifications, limitations or restrictions thereof in respect of each class of capital stock of the Corporation.

A. **COMMON STOCK**

1. General. The voting, dividend and liquidation rights of the holders of the Common Stock are subject to and qualified by the rights, powers and preferences of the holders of the Preferred Stock set forth herein.

2. Voting Rights. Each holder of Common Stock, as such, shall be entitled to one vote for each share of Common Stock held of record by such holder on all matters on which shareholders generally are entitled to vote; provided, that except as otherwise required by the TBOC, holders of Common Stock, as such, shall not be entitled to vote on any amendment to this Certificate of Formation (including any resolutions relating to any series of Preferred Stock) that relates solely to the terms of one or more outstanding series of Preferred Stock if the holders of such affected series are entitled, either separately or together with the holders of one or more other such series, to vote thereon pursuant to this Certificate of Formation (including any resolutions relating to any series of Preferred Stock) or pursuant to the TBOC.

3. Dividends and Distributions. Subject to the rights of the holders of Preferred Stock, holders of Common Stock shall be entitled to receive such dividends and other distributions in cash, securities or other property of the Corporation as may be declared thereon by the Board of Directors (the

16179356_18

"Board") from time to time out of the assets or funds of the Corporation legally available therefor and shall share equally on a per share basis in all such dividends and other distributions.

4. <u>Liquidation, Dissolution or Winding Up</u>. In the event of any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Corporation, after payment or provision for payment of the debts and other liabilities of the Corporation and subject to the rights of the holders of shares of any series of Preferred Stock upon such liquidation, dissolution or winding up, if any, the holders of all outstanding shares of Common Stock shall be entitled to receive the remaining assets of the Corporation available therefor and shall share equally on a per share basis in all such distributions.

5. <u>Conversion Rights</u>. The Common Stock shall not be convertible into, or exchangeable for, shares of any other class or classes of the Corporation's capital stock.

### B. PREFERRED STOCK

The first series of Preferred Stock shall be designated "<u>Series A-1 Preferred Stock</u>" and shall consist of 13,125,000 shares. The second series of Preferred Stock shall be designated "<u>Series A-2 Preferred Stock</u>" and shall consist of 2,500,000 shares. The third series of Preferred Stock shall be designated "<u>Series A-3 Preferred Stock</u>" and shall consist of 625,000 shares. The "<u>Stated Value</u>" of each share of Series A-1 Preferred Stock, Series A-2 Preferred Stock and Series A-3 Preferred Stock shall be $10.00, subject to appropriate adjustment in the event of any stock dividend, stock split, combination or other recapitalization with respect to the Preferred Stock or any series thereof. Unless otherwise indicated, references to "sections" or "subsections" in this Part B of this <u>Article IV</u> refer to sections and subsections of Part B of this <u>Article IV</u>.

The terms and provisions of the Series A-1 Preferred Stock, Series A-2 Preferred Stock and Series A-3 Preferred Stock are as follows:

1. <u>Dividends</u>.

  1.1 <u>Payment of PIK Dividends</u>. From and after the third anniversary of the effective date of the Debtors' Amended Joint Prepackaged Chapter 11 Plan of Reorganization, Case No. 17-31575 (the "<u>Plan</u>"), cumulative dividends at the rate per annum of seven percent (7%) of the Stated Value per share of Preferred Stock shall accrue on such shares of Preferred Stock (the "<u>PIK Dividends</u>"). The PIK Dividends shall accrue from day to day and shall be payable, on a <u>pari passu</u> basis, quarterly on March 31, June 30, September 30 and December 31 and upon any Deemed Liquidation Event (defined below), at the option of the Board, in the form of (a) cash, and/or (b)(i), with respect to the Series A-1 Preferred Stock, a number of additional shares of Series A-1 Preferred Stock, (ii) with respect to the Series A-2 Preferred Stock, a number of additional shares of Series A-2 Preferred Stock, and (iii) with respect to the Series A-3 Preferred Stock, a number of additional shares of Series A-3 Preferred Stock, in each case equal to the cash value of the PIK Dividend on such share that accrued during the preceding quarter, divided by the Stated Value of such share of Preferred Stock. No dividends shall be paid on shares of any series of Preferred Stock unless a corresponding dividend is paid on the shares of each other series of Preferred Stock. The payment of PIK Dividends each calendar quarter shall be mandatory to the extent permitted by applicable law. Unpaid cumulative PIK Dividends will compound quarterly. No fractional shares of Preferred Stock shall be issued as PIK Dividends. Whether or not fractional shares would be issuable as PIK Dividends shall be determined on the basis of the total number of shares of Series A-1 Preferred Stock, Series A-2 Preferred Stock or Series A-3 Preferred Stock to be issued as a PIK Dividend to any single holder of Series A-1 Preferred Stock, Series A-2 Preferred Stock or Series A-3 Preferred Stock, respectively, based on the total shares of Series A-1 Preferred Stock, Series A-2 Preferred Stock or Series A-3 Preferred Stock held by such holder immediately prior to the payment of such PIK Dividend. In lieu

2

16179356_18

of issuing any fractional share as PIK Dividends, the Corporation will pay cash equal to the value of such fractional share.

        1.2       Reservation of Shares. The Corporation shall at all times reserve and keep available out of its authorized but unissued Preferred Stock, for the purpose of issuing PIK Dividends pursuant to Subsection 1.1, such number of its duly authorized shares of Series A-1 Preferred Stock, Series A-2 Preferred Stock and Series A-3 Preferred Stock as shall from time to time be sufficient to issue PIK Dividends; and if at any time the number of authorized but unissued shares of Series A-1 Preferred Stock, Series A-2 Preferred Stock or Series A-3 Preferred Stock shall not be sufficient to issue in full all PIK Dividends pursuant to Subsection 1.1, the Corporation shall take such corporate action as may be necessary to increase its authorized but unissued shares of Series A-1 Preferred Stock, Series A-2 Preferred Stock or Series A-3 Preferred Stock, as applicable, to such number of shares as shall be sufficient for such purposes, including, without limitation, engaging in best efforts to obtain the requisite shareholder approval of any necessary amendment to the Certificate of Formation.

      2.       Liquidation, Dissolution or Winding Up; Certain Mergers, Consolidations and Asset Sales.

        2.1       Preferential Payments to Holders of Preferred Stock. In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation or Deemed Liquidation Event (defined below), the holders of shares of Preferred Stock then outstanding shall be entitled to be paid, on a *pari passu* basis, out of the assets of the Corporation available for distribution to its shareholders before any payment shall be made to the holders of Common Stock by reason of their ownership thereof, an amount per share equal to the greater of (a) the Stated Value per share together with all accrued but unpaid dividends thereon, or (b) the amount that would be payable if each share of Preferred Stock were converted into shares of Common Stock as of immediately prior to such liquidation, dissolution or winding up of the Corporation or Deemed Liquidation Event at a conversion rate equal to (1) the Stated Value per share together with all accrued but unpaid dividends thereon, divided by (2) the greater of (A) $15.15 per share, subject to any adjustments necessary to take into account any prior stock split, combination of shares, reorganization, or reclassification with respect to the Common Stock, or (B) the minimum price that would result in the persons identified as minority group members in the Corporation's most recent application for certification or recertification as a minority-owned business with the National Minority Supplier Development Council owning at least fifty one percent (51%) of the issued and outstanding shares of Common Stock of the Corporation (assuming that all shares of Preferred Stock were converted into shares of Common Stock as contemplated by this Subsection 2.1(b)(1)(B) and the full conversion and/or exercise of all securities that are, by their terms, convertible and/or exercisable into shares of Common Stock) as of immediately prior to such liquidation, dissolution or winding up of the Corporation or such Deemed Liquidation Event. The amount payable per share of Preferred Stock in the event of any liquidation, dissolution or winding up of the Corporation or Deemed Liquidation Event is referred to herein as the "Liquidation Amount" per share. For the avoidance of doubt, (1) in no event shall the Liquidation Amount ever be less than the Stated Value per share together with all accrued but unpaid dividends and (2) the Liquidation Amount shall be determined in the same manner for all shares of Preferred Stock. If upon any such liquidation, dissolution or winding up of the Corporation or Deemed Liquidation Event, the assets of the Corporation available for distribution to its shareholders shall be insufficient to pay the holders of shares of Preferred Stock the full amount to which they shall be entitled under this Subsection 2.1, the holders of shares of Preferred Stock shall share ratably in any distribution of the assets available for distribution in proportion to the respective amounts which would otherwise be payable in respect of the shares held by them upon such distribution if all amounts payable on or with respect to such shares were paid in full.

3

16179356_18

2.2 **Payments to Holders of Common Stock.** In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation or Deemed Liquidation Event, after the payment of all preferential amounts required to be paid to the holders of shares of Preferred Stock as contemplated by Subsection 2.1, the remaining assets of the Corporation available for distribution to its shareholders shall be distributed among the holders of shares of Common Stock, pro rata based on the number of shares held by each such holder.

2.3 **Deemed Liquidation Events.**

2.3.1 **Definition.** Each of the following events shall be considered a "**Deemed Liquidation Event**" unless the holders of at least a majority of the outstanding shares of Preferred Stock elect otherwise by written notice sent to the Corporation at least five (5) days prior to the effective date of any such event:

(a) the direct or indirect sale, lease, transfer, conveyance or other disposition (other than by way of merger or consolidation), in one or a series of related transactions, of all or substantially all of the properties or assets of the Corporation and its subsidiaries taken as a whole to any person (including any "person" (as that term is used in Section 13(d)(3) of the Exchange Act)), other than a Principal or a Related Party of a Principal;

(b) the consummation of any transaction (including, without limitation, any merger or consolidation), the result of which is that any person (including any "person" (as that term is used in Section 13(d)(3) of the Exchange Act)), other than the Principals and their Related Parties, becomes the beneficial owner, directly or indirectly, of more than 50% of the Voting Stock of the Corporation, measured by voting power rather than number of shares; or

(c) the Corporation consolidates with, or merges with or into, any person, or any person consolidates with, or merges with or into, the Corporation, in any such event pursuant to a transaction in which any of the outstanding Voting Stock of the Corporation or such other person is converted into or exchanged for cash, securities or other property, other than any such transaction where Voting Stock of the Corporation outstanding immediately prior to such transaction constitutes or is converted into or exchanged for a majority of the outstanding shares of the Voting Stock of such surviving or transferee person (immediately after giving effect to such transaction).

2.3.2 **Effecting a Deemed Liquidation Event.**

(a) The Corporation shall not have the power to effect a Deemed Liquidation Event referred to in Subsection 2.3.1(b) or Subsection 2.3.1(c) unless the agreement or plan of merger or consolidation for such transaction (the "**Merger Agreement**") provides that the consideration payable to the shareholders of the Corporation shall be allocated among the holders of capital stock of the Corporation in accordance with Subsections 2.1 and 2.2.

(b) In the event of a Deemed Liquidation Event referred to in Subsection 2.3.1(a), if the Corporation does not effect a dissolution of the Corporation under the TBOC within sixty (60) days after such Deemed Liquidation Event, then (i) the Corporation shall send a written notice to each holder of Preferred Stock no later than the sixtieth (60th) day after the Deemed Liquidation Event advising such holders of their right (and the requirements to be met to secure such right) pursuant to the terms of the following clause; (ii) to require the redemption of such shares of Preferred Stock, and (iii) if the holders of at least a majority of the then issued and outstanding shares of Preferred Stock voting together as a class so request in a written instrument delivered to the Corporation not later than ninety (90) days after such Deemed Liquidation Event, the Corporation shall use the consideration received by

4

16179356_18

the Corporation for such Deemed Liquidation Event (net of any retained liabilities associated with the assets sold, as determined in good faith by the Board), together with any other assets of the Corporation available for distribution to its shareholders, all to the extent permitted by the TBOC governing distributions to shareholders (the "Available Proceeds"), on the one hundred twentieth (120th) day after such Deemed Liquidation Event, to redeem all outstanding shares of Preferred Stock at a price per share equal to the Liquidation Amount. Notwithstanding the foregoing, in the event of a redemption pursuant to the preceding sentence, if the Available Proceeds are not sufficient to redeem all outstanding shares of Preferred Stock, the Corporation shall ratably redeem each holder's shares of Preferred Stock to the fullest extent of such Available Proceeds, and shall redeem the remaining shares as soon as it may lawfully do so under the TBOC governing distributions to shareholders. The provisions of Subsection 5.4, 5.5, 5.6 and 5.7 shall apply, with such necessary changes in the details thereof as are necessitated by the context, to the redemption of the Preferred Stock pursuant to this Subsection 2.3.2(b). Prior to the distribution or redemption provided for in this Subsection 2.3.2(b), the Corporation shall not expend or dissipate the consideration received for such Deemed Liquidation Event, except to discharge expenses incurred in connection with such Deemed Liquidation Event or in the ordinary course of business.

2.3.3 <u>Amount Deemed Paid or Distributed</u>. The amount deemed paid or distributed to the holders of capital stock of the Corporation pursuant to Subsection 2.3.2 shall be the cash or the value of the property, rights or securities paid or distributed to such holders by the Corporation or the acquiring person, firm or other entity. The value of such property, rights or securities shall be determined in good faith by the Board.

2.3.4 <u>Allocation of Escrow and Contingent Consideration</u>. In the event of a Deemed Liquidation Event, if any portion of the consideration payable to the shareholders of the Corporation is payable only upon satisfaction of contingencies (the "Additional Consideration"), the Merger Agreement shall provide that (a) the portion of such consideration that is not Additional Consideration (such portion, the "Initial Consideration") shall be allocated among the holders of capital stock of the Corporation in accordance with Subsections 2.1 and 2.2 as if the Initial Consideration were the only consideration payable in connection with such Deemed Liquidation Event; and (b) any Additional Consideration which becomes payable to the shareholders of the Corporation upon satisfaction of such contingencies shall be allocated among the holders of capital stock of the Corporation in accordance with Subsections 2.1 and 2.2 after taking into account the previous payment of the Initial Consideration as part of the same transaction. For the purposes of this Subsection 2.3.4, consideration placed into escrow or retained as holdback to be available for satisfaction of indemnification or similar obligations in connection with such Deemed Liquidation Event shall be deemed to be Additional Consideration.

3. <u>Voting Rights</u>.

3.1 <u>General</u>. Except as otherwise provided herein or as otherwise required by law, the holders of Preferred Stock shall have no voting rights.

3.2 <u>Preferred Stock Protective Provisions</u>. As long as any shares of Preferred Stock are outstanding, the Corporation shall not, without the affirmative vote of the holders of a majority of the then issued and outstanding shares of the Preferred Stock:

    (a) increase or decrease the number of authorized shares of Preferred Stock;

    (b) authorize or create any class of stock ranking as to dividends, redemption, voting rights or distribution of assets upon a liquidation or Deemed Liquidation Event pari

5

16179356_18

passu or senior to the Series A-1 Preferred Stock, Series A-2 Preferred Stock or Series A-3 Preferred Stock;

(c) issue shares of Preferred Stock except (i) pursuant to the dividend and conversion provisions expressly authorized herein and (ii) for up to 500,000 shares of Series A-3 Preferred Stock (or, with the approval of the Board pursuant to Subsection 4.2, Series A-1 Preferred Stock) to employees, officers, directors, contractors, consultants or advisors to the Corporation or any subsidiary pursuant to the Management Incentive Plan, as defined in the Plan, approved by the Board;

(d) increase or decrease the size of the Board;

(e) amend this Certificate of Formation or the Corporation's bylaws (the "Bylaws") (other than to amend this Certificate of Formation and/or the Bylaws to increase the number of authorized shares of Common Stock or to conform to Delaware law upon the conversion or reincorporation of the Corporation into Delaware);

(f) liquidate, dissolve or wind up the Corporation or effect any Deemed Liquidation Event, unless the holders of Preferred Stock shall be paid the full preferential amounts to which they are entitled pursuant to Subsection 2.1;

(g) purchase or redeem or pay or declare any dividend or make any distribution on, any shares of capital stock of the Corporation other than (i) redemptions of or dividends, including PIK Dividends, or distributions on the Preferred Stock as expressly authorized herein, (ii) repurchases of stock from current or former employees, officers, directors, consultants or other persons who performed services for the Corporation or any subsidiary in connection with the cessation of such employment or service or pursuant to settlement agreement subject to any limitation set forth in the Indenture dated as of May 31, 2017, by and among the Corporation, UMB Bank, National Association, as trustee, and U.S. Bank National Association, as collateral agent (the "Indenture"), or (iii) as unanimously approved by the Board; or

(h) incur any indebtedness that would prohibit the dividend rights and redemption rights of the Series A-1 Preferred Stock, Series A-2 Preferred Stock or Series A-3 Preferred Stock other than any indebtedness incurred under the Indenture or the Credit and Security Agreement dated as of May 31, 2017, by and among the Corporation, Multiband Field Services, Incorporated and Goodman Networks Services, LLC, as borrowers, Midcap Financial Trust, as agent and a lender, and the additional lenders from time to time party thereto, as amended, modified, supplemented and/or restated from time to time (the "Credit Facility") or any refinancing of the foregoing agreements; provided that such new agreements or arrangements are no more restrictive with regards to the payment of dividends on, or redemption of, the Series A-1 Preferred Stock, Series A-2 Preferred Stock or Series A-3 Preferred Stock than the restrictions set forth in the Indenture or the Credit Facility.

4. Conversion.

4.1 Mandatory Conversion of Series A-2 Preferred Stock. Immediately following the Corporation's redemption of shares of Series A-1 Preferred Stock with an aggregate Stated Value (including any cash dividends paid in connection therewith) of $10,000,000 pursuant to Section 5, each outstanding share of Series A-2 Preferred Stock shall be converted into one (1) fully paid and nonassessable share of Series A-1 Preferred Stock, subject to any adjustments necessary to take into account any prior stock split, combination of shares, reorganization, or reclassification with respect to the Series A-1 Preferred Stock without a corresponding and equivalent stock split, combination of shares, reorganization, or reclassification with respect to the Series A-2 Preferred Stock.

6

16179356_18

4.2    Optional Conversion of Series A-3 Preferred Stock. After the Corporation's redemption of Series A-1 Preferred Stock with an aggregate Stated Value (including any cash dividends paid in connection therewith) of $15,000,000 pursuant to Section 5 (inclusive of the prior redemptions as contemplated by Section 4.1) with the written approval of the Board, in its sole discretion, each outstanding share of Series A-3 Preferred Stock shall be converted into one (1) fully paid and nonassessable share of Series A-1 Preferred Stock, subject to any adjustments necessary to take into account prior to any stock split, combination of shares, reorganization, or reclassification with respect to the Series A-1 Preferred Stock without a corresponding and equivalent stock split, combination of shares, reorganization, or reclassification with respect to the Series A-3 Preferred Stock.

4.3    No Other Conversion Rights. Except as set forth above, the Series A-1 Preferred Stock, Series A-2 Preferred Stock and Series A-3 Preferred Stock shall not be convertible into, or exchangeable for, shares of any other class or classes of the Corporation's capital stock.

4.4.    Procedural Requirements. All holders of record of shares of Series A-2 Preferred Stock or Series A-3 Preferred Stock, as the case may be, shall be sent written notice of the conversion of all such shares of Series A-2 Preferred Stock or Series A-3 Preferred Stock, as applicable, pursuant to this Section 4. Such notice need not be sent in advance of the conversion. Upon receipt of such notice, each holder of shares of Series A-2 Preferred Stock or Series A-3 Preferred Stock, as the case may be, in certificated form shall surrender his, her or its certificate or certificates for all such shares (or, if such holder alleges that such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Corporation and its transfer agent to indemnify the Corporation and its transfer agent against any claim that may be made against the Corporation or its transfer agent on account of the alleged loss, theft or destruction of such certificate) to the Corporation and its transfer agent at the place designated in such notice. If so required by the Corporation or its transfer agent, any certificates surrendered for conversion shall be endorsed or accompanied by written instrument or instruments of transfer, in form satisfactory to the Corporation and its transfer agent, duly executed by the registered holder or by his, her or its attorney duly authorized in writing. All rights with respect to the series of Preferred Stock converted pursuant to Subsections 4.1 or 4.2 will terminate at the time of conversion (notwithstanding the failure of the holder or holders thereof to surrender any certificates at or prior to such time), except only the rights of the holders thereof, upon surrender of any certificate or certificates of such holders (or lost certificate affidavit and agreement) therefor, or his, her or its nominee, to receive a certificate or certificates, or a notice of issuance of uncertificated shares, for the number of shares of Series A-1 Preferred Stock issuable on such conversion in accordance with the provisions hereof. Such converted Series A-2 Preferred Stock or Series A-3 Preferred Stock shall be retired and cancelled and may not be reissued as shares of such series, and the Corporation may thereafter take such appropriate action (without the need for shareholder action) as may be necessary to reduce the authorized number of shares of Series A-2 Preferred Stock or Series A-3 Preferred Stock accordingly.

4.5    Reservation of Stock. The Corporation shall at all times when the Series A-2 Preferred Stock and Series A-3 Preferred Stock shall be outstanding, reserve and keep available out of its authorized but unissued capital stock, for the purpose of effecting the conversion of the Series A-2 Preferred Stock and Series A-3 Preferred Stock, such number of its duly authorized shares of Series A-1 Preferred Stock as shall from time to time be sufficient to effect the conversion of all outstanding Series A-2 Preferred Stock and Series A-3 Preferred Stock; and if at any time the number of authorized but unissued shares of Series A-1 Preferred Stock shall not be sufficient to effect the conversion of all then outstanding shares of the Series A-2 Preferred Stock and Series A-3 Preferred Stock, the Corporation shall take such corporate action as may be necessary to increase its authorized but unissued shares of Series A-1 Preferred Stock to such number of shares as shall be sufficient for such purposes, including, without limitation, engaging in best efforts to obtain the requisite shareholder approval of any necessary amendment to the Certificate of Formation.

7

16179356_18

5.  Redemption.

    5.1  Optional Redemption. Subject to any limitations set forth in the Corporation's Credit Facility or Indenture, at any time and from time, to time to the extent it may lawfully do so, the Corporation shall have the right at its option to redeem all or less than all of the outstanding shares of Preferred Stock at a per share redemption price (the "Redemption Price") equal to the Stated Value per share together with all accrued but unpaid dividends thereon.

    5.2  Mandatory Redemption. Subject to any limitations set forth in the Corporation's Credit Facility or Indenture, as soon as practicable following the filing date of this Certificate of Formation, and within fifteen (15) days following each March 31, June 30, September 30 and December 31 thereafter prior to a Deemed Liquidation Event (each, a "Redemption Date"), to the extent it may lawfully do so, the Corporation shall redeem a number of shares of Preferred Stock equal to (a) (i) prior to the redemption of $10,000,000 in the aggregate of Preferred Stock, the amount of Excess Net Cash (as defined in the Indenture) as of March 31, June 30, September 30 or December 31, as applicable, immediately prior to the Redemption Date, and (ii) thereafter, the lesser of (A) the amount of Excess Net Cash (as defined in the Indenture) as of the March 31, June 30, September 30 or December 31, as applicable, immediately prior to the Redemption Date, and (B) the amount of Excess Cash Flow (as defined in the Indenture) generated during the calendar quarter ending as of the March 31, June 30, September 30 or December 31, as applicable, immediately prior to the Redemption Date, divided by (b) the Redemption Price, until all shares of Series A-1 Preferred Stock and, if determined by the Corporation's Board in its sole discretion, Series A-3 Preferred Stock, have been redeemed.

    5.3  Priority of Redemptions. The Corporation shall redeem shares of Series A-1 Preferred Stock and Series A-3 Preferred Stock pursuant to this Section 5 in the following order:

        (a)  first, the Corporation shall redeem shares of Series A-1 Preferred Stock, pro rata from the holders thereof based on the number of shares of Series A-1 Preferred Stock held by them, until the Corporation has redeemed all shares of Series A-1 Preferred Stock; and

        (b)  second, if determined by the Corporation's Board in its sole discretion, the Corporation shall redeem shares of Series A-3 Preferred Stock, pro rata from the holders thereof based on the number of shares of Series A-3 Preferred Stock held by them, until the Corporation has redeemed all shares of Series A-3 Preferred Stock.

    5.4  Redemption Notice. The Corporation shall send written notice of any redemption pursuant to this Section 5 (each, a "Redemption Notice") to each holder of record of shares of Preferred Stock to be redeemed not less than seven (7) days prior to each Redemption Date. Each Redemption Notice shall state:

        (a)  with respect to redemptions made pursuant to Subsection 5.2, the Corporation's Excess Net Cash and Excess Cash Flow, as of the date of determination;

        (b)  the aggregate number of shares of Preferred Stock to be redeemed on the applicable Redemption Date and the number of shares of Preferred Stock held by the holder that the Corporation shall redeem on the Redemption Date;

        (c)  the Redemption Date and the aggregate Redemption Price to be paid to the holder; and

8

16179356_18

(d) for holders of shares in certificated form, that the holder is to surrender to the Corporation or its transfer agent, in the manner and at the place designated, his, her or its certificate or certificates representing the shares of Preferred Stock to be redeemed. In the event fewer than all of the shares of Preferred Stock represented by a certificate are redeemed, a new certificate, instrument, or book entry representing the unredeemed shares of Preferred Stock shall promptly be issued to such holder.

5.5 Surrender of Certificates; Payment. On or before the applicable Redemption Date, each holder of shares of Preferred Stock to be redeemed on such Redemption Date shall, if a holder of shares in certificated form, surrender the certificate or certificates representing such shares (or, if such registered holder alleges that such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Corporation and its transfer agent to indemnify the Corporation and its transfer agent against any claim that may be made against the Corporation or its transfer agent on account of the alleged loss, theft or destruction of such certificate) to the Corporation or its transfer agent, in the manner and at the place designated in the Redemption Notice, and thereupon the Redemption Price for such shares shall be payable to the order of the person whose name appears on such certificate or certificates as the owner thereof. In the event fewer than all of the shares of Preferred Stock represented by a certificate are redeemed, a new certificate, instrument, or book entry representing the unredeemed shares of Preferred Stock shall promptly be issued to such holder.

5.6 Rights Subsequent to Redemption. If the Redemption Notice shall have been duly given, and if on the applicable Redemption Date the Redemption Price payable upon redemption of the shares of Preferred Stock to be redeemed on such Redemption Date is paid or tendered for payment or deposited with an independent payment agent so as to be available therefor in a timely manner, then notwithstanding that any certificates evidencing any of the shares of Preferred Stock so called for redemption shall not have been surrendered, dividends with respect to such shares of Preferred Stock shall cease to accrue after such Redemption Date and all rights with respect to such shares shall forthwith after the Redemption Date terminate, except only the right of the holders to receive the Redemption Price without interest upon surrender of any such certificate or certificates therefor.

5.7 Redeemed or Otherwise Acquired Shares. Any shares of Preferred Stock that are redeemed or otherwise acquired by the Corporation or any of its subsidiaries shall be automatically and immediately cancelled and retired and shall not be reissued, sold or transferred. Neither the Corporation nor any of its subsidiaries may exercise any voting or other rights granted to the holders of Preferred Stock following redemption.

6. Waiver. Any of the rights, powers, preferences and other terms of the Preferred Stock or any series thereof set forth herein may be waived on behalf of all holders of Preferred Stock or any series thereof by the affirmative written consent or vote of the holders of at least a majority of the shares of Preferred Stock or such series then outstanding.

7. Notices. Any notice required or permitted by the provisions of this Article IV to be given to a holder of shares of Preferred Stock shall be mailed, postage prepaid, to the post office address last shown on the records of the Corporation, or given by electronic communication in compliance with the provisions of the TBOC, and shall be deemed sent upon such mailing or electronic transmission.

8. Business Day. If any payment required to be made by the Corporation falls on a day other than a business day, such payment shall be due and payable on the next succeeding business day.

9

16179356_18

## ARTICLE FIVE

5.1 Bylaws. Subject to Article IV, Subsection 3.2(e) and the Shareholders Agreement, the Board shall have the power to adopt, alter, amend, change or repeal the Bylaws. Subject to Article IV, Subsection 3.2(e) and the Shareholders Agreement, the shareholders may adopt, amend or repeal the Bylaws only with the affirmative vote of the holders of not less than a majority of the issued and outstanding shares entitled to vote thereon, voting together as a single class.

5.2 Advance Notice. Advance notice of shareholder nominations for the election of directors of the Corporation and of business to be brought by shareholders before any meeting of shareholders of the Corporation shall be given in the manner provided in the Bylaws.

## ARTICLE SIX

6.1 Annual Meetings. An annual meeting of shareholders for the election of directors to succeed those whose terms expire and for the transaction of such other business as may properly come before the meeting shall be held at such place, on such date, and at such time that is stated in or set in accordance with the Corporation's Bylaws. Advance notice of shareholder nominations for the election of directors of the Corporation and of business to be brought by shareholders before any meeting of shareholders of the Corporation will be given in the manner provided in the Bylaws.

6.2 Special Meetings. Special meetings of the shareholders may be called only by (i) the Board acting pursuant to a resolution adopted by a majority of the Board (ii) by the Chairman, Chief Executive Officer or President of the Corporation or (iii) the holders of at least 50% of the Common Stock. Any business transacted at any special meeting of shareholders shall be limited to matters relating to the purpose or purposes stated in the notice of meeting.

6.3 Action by Written Consent. Any action required or permitted to be taken by shareholders at any annual or special meeting of shareholders may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than a majority of the shares entitled to vote, or, if greater, not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted; provided, that from and after the closing of a Qualified Offering, any action required or permitted to be taken by the shareholders of the Corporation may be effected only at a duly called annual or special meeting of shareholders of the Corporation and may not be effected by any consent in writing by such shareholders.

## ARTICLE SEVEN

7.1 Limitation of Liability. To the fullest extent permitted by the TBOC, a director of the Corporation shall not be liable to the Corporation or its shareholders for monetary damages for breach of fiduciary duty as a director. Without limiting the effect of the preceding sentence, if the TBOC is hereafter amended to authorize the further elimination or limitation of the liabilities of a director, then the liability of a director of the Corporation will be eliminated or limited to the fullest extent permitted by the TBOC, as so amended.

7.2 Indemnification. The Corporation shall have the power to indemnify to the fullest extent permitted by the TBOC any person made or threatened to be made a party to an action or proceeding, whether criminal, civil, administrative or investigative, by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, any predecessor of the Corporation or any subsidiary or affiliate of the Corporation, or serves or served as a director, officer, partner, venturer,

10

16179356_18

proprietor, trustee, employee, agent or similar functionary of another corporation, partnership, limited liability company, joint venture, trust or other enterprise, including service with respect to an employee benefit plan, at the request of the Corporation, any predecessor to the Corporation or any subsidiary or any affiliate of the Corporation. The Corporation shall indemnify any person made or threatened to be made a party to an action or proceeding, whether criminal, civil, administrative or investigative, by reason of the fact that he is or was a director or officer of the Corporation or any predecessor of the Corporation, or serves or served as a director, officer, partner, venturer, proprietor, trustee, employee, agent or similar functionary of another corporation, partnership, limited liability company, joint venture, trust or other enterprise, including service with respect to an employee benefit plan, at the request of the Corporation, any predecessor to the Corporation or any subsidiary or any affiliate of the Corporation as and to the extent (and on the terms and subject to the conditions) set forth in the Bylaws or in any contract of indemnification entered into by the Corporation and any such person.

7.3 <u>Insurance</u>. The Corporation shall have power to purchase and maintain insurance on its own behalf and on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, limited liability company, joint venture, trust or other enterprise, including service with respect to an employee benefit plan, against any expense, liability or loss asserted against such person and incurred by such person in any such capacity or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under the TBOC.

7.4 <u>Non-Exclusivity</u>. The rights and authority conferred in this <u>Article VII</u> shall not be exclusive of any other right which any person may otherwise have or hereafter acquire and shall, unless otherwise provided when authorized or ratified, continue as to a person who has ceased to be a director, officer, employee or agent of the Corporation and shall inure to the benefit of the heirs, executors and administrators of such a person.

7.5 <u>Vested Rights</u>. Neither the repeal nor modification of this <u>Article VII</u>, Certificate of Formation, the Bylaws, nor, to the fullest extent permitted by the TBOC, any applicable law, shall adversely affect any right or protection of any person granted pursuant hereto existing at, or arising out of or related to any event, act, omission, transaction or fact that occurred prior to the time of such repeal or modification (regardless of when any proceeding (or part thereof) relating to such event, act, omission, transaction or fact arises or is first threatened, commenced or completed).

## ARTICLE EIGHT

8.1 <u>Change in Vote Required</u>. Except as provided in this Third Amended and Restated Certificate of Formation, pursuant to Section 21.365 of the TBOC, any action of the Corporation which, under the provisions of the TBOC or any other applicable law, is required to be authorized or approved by the holders of any specified fraction which is in excess of one-half or any specified percentage which is in excess of fifty percent of the outstanding shares (or of any class or series thereof) of the Corporation shall, notwithstanding any law, be deemed effectively and properly authorized or approved if authorized or approved by the vote of the holders of more than fifty percent of the outstanding shares entitled to vote thereon (or, if the holders of any class or series of the Corporation's shares shall be entitled by the TBOC or any other applicable law to vote thereon separately as a class, by the vote of the holders of more than fifty percent of the outstanding shares of each such class or series). Without limiting the generality of the foregoing, the foregoing provisions of this <u>Article VIII</u> shall be applicable to any required shareholder authorization or approval of: (a) any amendment to this Certificate of Formation; (b) any plan of merger, share exchange, or reorganization involving the Corporation; (c) any sale, lease, exchange, or other disposition of all, or substantially all, the property and assets of the Corporation; and

11

(d) any voluntary dissolution of the Corporation. Notwithstanding anything to the contrary contained in this Certificate of Formation or the Bylaws, and notwithstanding that a lesser percentage or vote may be permitted from time to time by the TBOC, from and after the closing of a firm commitment underwritten public offering pursuant to an effective registration statement on Form S-1 (or successor form) under the Securities Act of 1933, as amended, covering the sale of Common Stock with aggregate gross proceeds to the Corporation (prior to underwriters' commissions and expenses) of not less than $50,000,000 (a "Qualified Offering"), no provision of this Certificate of Formation may be altered, amended, changed or repealed in any respect, nor may any provision of this Certificate of Formation or of the Bylaws inconsistent therewith be adopted, unless in addition to any other vote required by this Certificate of Formation or otherwise required by the TBOC, such alteration, amendment, repeal or adoption is approved at a meeting of the shareholders called for that purpose by the affirmative vote of the holders of at least sixty-six and two-thirds percent (66 2/3%) of the shares of capital stock entitled to vote thereon, voting together as a single class.

8.2   No Additional Voting Rights. Nothing contained in this Article VIII is intended to require shareholder authorization or approval of any action of the Corporation whatsoever unless such approval is specifically required by the other provisions of this Third Amended and Restated Certificate of Formation, the Bylaws of the Corporation, or by the TBOC or other applicable law.

## ARTICLE NINE

Unless the Corporation consents in writing to the selection of an alternative forum, the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's shareholders, (iii) any action asserting a claim against the Corporation or any director, officer or other employee of the Corporation arising pursuant to any provision of the TBOC or this Certificate of Formation or Bylaws (as either may be amended from time to time) or (iv) any action asserting a claim against the Corporation or any director, officer or other employee of the Corporation governed by the internal affairs doctrine shall be the state and federal courts located in Dallas County, Texas. Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Article IX.

## ARTICLE TEN

No holder of any shares of capital stock of the Corporation, whether now or hereafter authorized, shall, as such holder, have any preemptive or preferential right to receive, purchase, or subscribe to (i) any unissued or treasury shares of any class of stock (whether now or hereafter authorized) of the Corporation, (ii) any obligations, evidences of indebtedness, or other securities of the Corporation convertible into or exchangeable for, or carrying or accompanied by any rights to receive, purchase, or subscribe to, any such unissued or treasury shares, (iii) any right of subscription to, any right to receive, or any warrant or option for the purchase of, any of the foregoing securities, or (iv) any other securities that may be issued or sold by the Corporation, in each case except for such rights as are explicitly provided by contract, including the Shareholders Agreement.

## ARTICLE ELEVEN

No person entitled to vote at an election for directors may cumulate votes to which such person is entitled.

12

16179356_18

## ARTICLE TWELVE

Except as otherwise set forth herein, for purposes of this Certificate of Formation, the following terms shall have the meanings indicated:

(a) "affiliate" shall mean a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, another person.

(b) "business day" shall mean any day other than a Saturday, Sunday or other day on which banks are required or permitted to close in the State of Texas.

(c) "control," including the terms "controlling," "controlled by" and "under common control with," shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting stock, by contract or otherwise. "Exchange Act" shall mean the Securities Exchange Act of 1934, as amended.

(d) "group" shall be determined in accordance with Section 13(d)(3) of the Exchange Act and the rules and regulations promulgated thereunder.

(e) "person" shall mean an individual, any general partnership, limited partnership, limited liability company, corporation, trust, business trust, joint-stock company, joint venture, unincorporated association, cooperative or association or any other legal entity or organization of whatever nature, and shall include any successor (by merger or otherwise) of such entity.

(f) "Principal" means any member of the Goodman family who is, directly or indirectly, a shareholder of the Corporation.

(g) "Related Parties" means: (i) any controlling stockholder, at least 51% owned (and controlled) subsidiary, or in the case of any individual, any immediate family member or descendant of any Principal and the heirs, executors and administrators and beneficiaries of the estate of such Principal or any such family member, or (ii) any trust, corporation, partnership, limited liability company or other entity, the beneficiaries, stockholders, partners, members, owners or persons beneficially holding at least a 51% (and controlling) interest of which consists of any one or more Principals and/or such other persons referred to in the immediately preceding clause (i).

(h) "stock" shall mean, with respect to any corporation, capital stock and, with respect to any other entity, any equity interest.

(i) "Voting Stock" of any specified person as of any date means the capital stock or other equity interests of such person that is at the time entitled to vote in the election of the board of directors or other similar governing authority of such person.

## ARTICLE THIRTEEN

The number of directors presently constituting the Board is 5, and the names of the persons who are serving presently are directors of the Corporation are as follows:

| **Name** | **Mailing Address** |
|---|---|
| John A. Goodman | 2801 Network Blvd., Ste. 300<br>Frisco, Texas 75034 |

13

16179356_18

| | |
|---|---|
| Jason A. Goodman | 2801 Network Blvd., Ste. 300<br>Frisco, Texas 75034 |
| Sherman K. Edmiston III | 2801 Network Blvd., Ste. 300<br>Frisco, Texas 75034 |
| Rocco Romanella | 2801 Network Blvd., Ste. 300<br>Frisco, Texas 75034 |
| Mark Keiffer | 2801 Network Blvd., Ste. 300<br>Frisco, Texas 75034 |

Each director shall have one (1) vote on any matter submitted to the Board, provided, however, that in the event there shall be a vacancy with respect to one (1) of the two (2) directors to be appointed pursuant to Section 4.20 of the Indenture (each a "Noteholder Director" and together the "Noteholder Directors"), the then-serving Noteholder Director shall have two (2) votes on any matter submitted to the Board until the election of a Noteholder Director to the Board to fill the Noteholder Director vacancy; provided that such then-serving Noteholder Director shall only have one (1) vote if the holders of promissory notes subject to the Indenture have failed to submit any nominee for the Noteholder Director vacancy by the Nomination Deadline (as defined in the Indenture) or to vote any promissory notes subject to the Indenture for any nominee for the Noteholder Director vacancy by the Voting Deadline (as defined in the Indenture), all in accordance with the terms of the Indenture. Each director serving on a committee shall have one (1) vote on any matter submitted to such committee.

* * *

14

16179356_18