# ATTACHMENT A

## I. **INSTRUCTIONS**

1. Unless otherwise expressly specified, each document request below requests and calls for documents prepared, created, received, generated, or transmitted from January 1, 2021, to the present.

2. For document that no longer exists or that cannot be located, identify the document; state how and when it passed out of existence, or when it could no longer be located, and the reason(s) for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

3. All documents must be produced in a form that renders them susceptible to copying and electronic scanning. All electronic documents and records (electronically stored information or "ESI") must be produced in a format sufficient to render the records and information accessible and intelligible.

4. Documents from any file should be produced in the same order as they were found in such file. If copies of documents are produced in lieu of the originals, such copies should be produced in the same order and organization as the original and be legible and bound or stapled in the same manner as the original. In the case of an electronic document, including but not limited to emails, such document should be produced with its corresponding electronic attachments.

5. The fact that a document is in a defendant's possession does not relieve you of the obligation to produce all of your copies of the same document, even if you believe your copies are identical in all respects to a document produced or held by any other person.

6. Should you object to any request on any basis, state whether you are withholding any responsive documents on the basis of such objection.

7.     Produce all documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in this request. Produce all documents in your possession, custody, or control, including any documents you have the ability to obtain from any other Person, including your present or former accountants, attorneys, brokers, advisors, other agents, or employer. If production is requested of a document that is no longer in your possession, custody or control, your response should state when the document was most recently in your possession, custody or control, the disposition of the document, and the identity of the person, if any, presently in possession, custody or control of such document. If the document has been destroyed, state the reason for its destruction. You have a continuing duty to furnish additional documents in response to these Requests in accordance with Rule 26(e) of the Federal Rules of Civil Procedure. Any additional information relating in any way to these Requests that you acquire, or that becomes known to you, up to and including the time of trial, shall be furnished to Plaintiff promptly after you acquire or become aware of such information.

8.     If you object to furnishing any information requested by these requests on the basis of attorney-client privilege, attorney work product, or any other privilege, state the existence of the information, identify the specific ground on which your objection is based (e.g., attorney work product, attorney-client privilege) and produce a privilege log for any documents that contain the information on which you base your claim of privilege! If you object to providing any information on the grounds other than a claim of privilege, state the grounds upon which the objection is based with sufficient specificity to permit determination of the propriety of such objection. The log must state: (a) the name of the document; (b) the name and address of the person(s) who prepared the document; (c) the person(s) to whom the document was directed or circulated; (d) the date(s) on which the document was prepared or transmitted; (e) the name and address of the person now in possession of the document; (f) a description of the subject matter of the document; and (g) the specific nature of the privilege or protection claimed with respect to the document.

## II.     DEFINITIONS

1. "And" as used herein shall mean and/or.

2. "Or" as used herein shall mean and/or.

3. "Any" as used herein shall mean any and all.

4. "Related to" and/or "relating" to as used herein means consisting of, referring to, reflecting, supporting, prepared in connection with, used in preparation for, or being in any way legally or factually connected to.

5. "Communication" or "communications" means any transmission of words or thoughts between or among two or more persons, whether written or oral, including discussions, representations, meetings, conversations, agreements, negotiations, telephone conversations, letters, emails, voicemails, text messages, notes, social media postings, public and private social media messages, all forms of digital communications, or any record thereof, or any other manner of transmittal.

6. "Document" as used herein shall mean any tangible thing upon which any expression, communication or representation has been recorded by any means. It includes, but is not limited to, all documents covered by Federal Rules of Civil Procedure 34(a)(I)(A), including the original and any copy of any written or graphic matter, whether sent or received or neither, such as contracts, letters of intent, or any other written legal agreements, papers, letters, correspondence, email, text messages, memoranda, typed or handwritten notes, notations, work papers, reports, and recordings of telephone or other conversations, or of interviews or of conferences or other meetings, maps, charts, plans, specifications, diagrams, affidavits, statements, summaries, opinions, reports, journals, and all other records kept by electronic, photographic or mechanical means, and items similar to any of the foregoing.

7. "James Frinzi" means the individual James Frinzi or any mobile device, phone, or phone number associated with James Frinzi, including the phone number (202) 430-4500.

8. "James Goodman" means the individual James Frinzi or any mobile device, phone, or phone number associated with James Frinzi, including the phone number (210)

859-5678.

9.  "John Goodman" means the individual John Goodman or any mobile device, phone, or phone number associated with John Goodman, including the phone number (210) 323-6262.

10. "Jason Goodman" means the individual John Goodman or any mobile device, phone, or phone number associated with John Goodman, including the phone number 469-247-1488.

11. "Jody Goodman" means the individual Joseph "Jody" Goodman or any mobile device, phone, or phone number associated with Jody Goodman, including the phone number 214-500-0103.

12. "Shalom Auerbach" means the individual Shalom Auerbach or any mobile device, phone, or phone number associated with Shalom Auerbach, including the phone number (917) 364-7051.

13. "AMRR" means American Metals Recovery and Recycling, Inc., including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

14. "AMR" means AMR Resources, LLC, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

15. "MBG" means MBG Holdings, Inc., including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

16. "Sierra" means SierraConstellation Partners, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

17. "World Conquest" means World Conquest LLC, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the

entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

18. "Goodman Networks" means Goodman Networks, Inc., including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

19. "Goodman Solutions" means Goodman Solutions, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

20. "GIH" means Goodman Investment Holdings, LLC, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

21. "Genesis" means Genesis Networks Telecom Services, LLC, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

22. "ATC" means ATC Logistics, Inc., including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

23. "GNET" means GNET ATC LLC, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

24. "Arris" means ARRIS Solutions, Inc., including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

25. "FedEx" means FedEx Supply Chain Logistics & Electronics, Inc., including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate

or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

26. "MFS" means Multiband Field Services, Inc., including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

27. "MGR" means Multiband Global Resources, LLC, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

28. "Multiband USA" means Multiband USA, LLC, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

29. "OFS" means Onepath Field Services, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

30. "OnePath" means OnePath Systems, LLC, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

31. "MSouth" means MSouth Equity Partners, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

32. "OEM" means OEM Capital Corp., including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

33. "OIS" means Onepath Integrated Services, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity,

whether active or retired, full-time or part-time, current or former, and compensated or not.

34. "Onepath HoldCo" means Onepath Holding Corp., including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

35. "1MS" means 1Path Managed Services, LLC., including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

36. "Repository" means Repository Services, LLC, including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

37. "UFS" means Unified Field Services, Inc., including any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

38. "Signal Messenger" means a messaging service for instant messaging, voice calls, and video calls owned, managed, controlled, designed, produced, or created by Signal Messenger, LLC or Signal Technology Foundation. The instant messaging function includes sending text, voice notes, images, videos, and other files to either other users or groups of users.

### III.    DOCUMENTS REQUESTED

1. All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman, and Shalom Auerbach by or through Signal Messenger.

2. All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman and Shalom Auerbach, by or through Signal Messenger, relating to AMR, MBG, Sierra, World Conquest, Goodman Networks, Goodman Solutions, GIH, Genesis, ATC, GNET, Arris, AT&T, FedEx, MFS, MGR, Multiband USA, OFS, OnePath, MSouth, OEM, OIS, OnePath HoldCo, 1MS, Repository, or UFS.

3. All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman, and Shalom Auerbach, by or through Signal Messenger, relating to the sale or purchase of stock, shares, bonds, or notes.

4. All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman, and Shalom Auerbach, by or through Signal Messenger, relating to the sale or transfer of any assets of Goodman Networks.

5. All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman, and Shalom Auerbach, by or through Signal Messenger, relating to the board of directors of Goodman Networks.

6. All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman, and Shalom Auerbach, by or through Signal Messenger, relating to lawsuits filed by AT&T or Arris.

7. All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman and Shalom Auerbach, by or through Signal Messenger, relating to Goodman Networks' petition for bankruptcy and its creditors.