**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-31641-MVL-7 |
| | § | |
| GOODMAN NETWORKS, INC., | § | |
| | § | |
| DEBTOR. | § | CHAPTER 7 |
| SCOTT M. SEIDEL, TRUSTEE, | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | ADVERSARY NO. 24-03039-MVL |
| | § | |
| JAMES FRINZI, JAMES GOODMAN, JASON GOODMAN, AND JOSEPH GOODMAN | § § | |
| | § | |
| DEFENDANTS | § | |

**BRIEF IN SUPPORT OF
JAMES E. GOODMAN'S MOTION TO QUASH THIRD-PARTY SUBPOENAS
[RELATING TO ADV. DKT. 33]**

Randall A. Pulman
Texas Bar No. 16393250
Anna K. MacFarlane
Texas Bar No. 24116701
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Hwy, Suite 400
San Antonio, Texas 78213
(210) 222-9494
rpulman@pulmanlaw.com
amacfarlane@pulmanlaw.com

**COUNSEL FOR JAMES E. GOODMAN**

i

TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND .............................................................................. 1

ARGUMENT AND AUTHORITIES ................................................................................................. 3

   A.  Legal Standard................................................................................................................ 3

   B.  The Signal Subpoenas are Seek Information that is Potentially Privileged ...........5

   C.  The Court has No Discretion to Deny Arbitration of the Trustee's State Law Claims. ........ 6

CONCLUSION & PRAYER ........................................................................................................... 6

# TABLE OF AUTHORITIES

**Case Law** **Page**

*Brown v. Braddick*,
    595 F.2d 961 (5th Cir. 1979) ........................................................................................3

*Clewett v. TXU Energy Retail Co., LLC*,
    No. 3:21-CV-0692-S, 2023 WL 6536148 (N.D. Tex. Jan. 30, 2023).........................3, 4, 5

*Fuller v. Werner Enterprises, Inc.*,
    No. 3:16-CV-2958-BK, 2018 WL 10374819 (N.D. Tex. Apr. 24, 2018) ..........................4

*Quilling v. Erwin & Johnson, LLP*,
    No. 3:07-CV-1153-P, 2009 WL 10704320 (N.D. Tex. Dec. 15, 2009) ............................4

**Rules**

Fed. R. Civ. P. 26(b)(1).....................................................................................................4

Fed. R. Civ. P. 26(c)..........................................................................................................4

Fed. R. Civ. P. 45(d)(3)(A)(iii) .........................................................................................3

4883-2500-8857, v. 2

## INTRODUCTION

This is a breach of fiduciary duty case against former directors and officers of the Debtor. The Trustee has filed notice of intent to issue subpoenas to two entities in an apparent attempt to obtain all communications between the defendants using the Signal messaging application. The subpoenas are not appropriately limited in scope or time. The subpoenas would potentially result in the Trustee obtaining confidential and private information of the defendants that has no bearing on the issues in this proceeding. The Trustee is engaged in a fishing expedition through overbroad subpoenas that serve only to harass the defendants. The subpoenas should therefore be quashed.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 6, 2022, an involuntary chapter 11 petition was filed against the Debtor. On December 12, 2022, the Court entered an order for relief under title 11 of the United States Code.

Scott M. Seidel, Trustee for the Debtor ("Trustee"), filed this adversary proceeding on June 7, 2024, against James Frinzi, James Goodman ("J.E. Goodman"), and J.E. Goodman's siblings, Jason and Joseph Goodman, seeking redress for various alleged corporate misdeeds vis-à-vis the Debtor. The causes of action against J.E. Goodman specifically focus on alleged breaches of various common law fiduciary duties owed by J.E. Goodman to the Debtor: breach of the duty of due care (Count 1), the duty of obedience (Count 3), and the duty of loyalty and due care (Count 5). Adv. Docket No. 1 [Complaint] ¶¶ 135-140; 154-167; 178-187.

On August 14, 2024, the Trustee filed two notices of Intent to Serve Non-Party Subpoena to Produce Documents, Information, or Objects in a Civil Action (the "Notices"). Adv. Docket No. 24 & No. 25. Attached to one Notice was a proposed subpoena to Signal Technology Foundation and attached to the other Notice was a proposed subpoena to Signal Messenger, LLC and both seek messages sent using Signal Messenger (the "Signal Subpoenas"). Adv. Docket No.

1

24-1, 24-2, 25-1, & 25-2. The Notices failed to include a date when the Signal Subpoenas would be served and it is unknown at this time if the Signal Subpoenas were served.

The documents sought by the Signal Subpoenas are for the period of January 1, 2021 to "the present." Adv. Docket No. 24-2 at 1; Adv. Docket No. 25-2 at 1. The Signal Subpoenas both seek the following documents:

1. All communications between and among James Frinzi, James Goodman[1], John Goodman, Jason Goodman, Jody Goodman, and Shalom Auerbach by or through Signal Messenger.

2. All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman, and Shalom Auerbach by or through Signal Messenger relating to AMR, MBG, Sierra, World Conquest, Goodman Networks, Goodman Solutions, GIH, Genesis, ATC, GNET, Arris, AT&T, FedEx, MFS, MGR, Multiband USA, OFS, OnePath, MSouth, OEM, OIS, OnePath HoldCo, 1 MS, Repository, or UFS.

3. All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman, and Shalom Auerbach by or through Signal Messenger, relating to the sale or purchase of stock, shares, bonds, or notes.

4. All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman, and Shalom Auerbach by or through Signal Messenger relating to the sale or transfer of any assets of Goodman Networks.

5. All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman, and Shalom Auerbach by or through Signal Messenger, relating to the board of directors of Goodman Networks.

6. All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman, and Shalom Auerbach by or through Signal Messenger, relating to lawsuits filed by AT&T or Arris.

7. All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman, and Shalom Auerbach by or

---

[1] According to definition number 8, the term "James Goodman" is intended to mean "the individual James Frinzi or any mobile device, phone, or phone number associated with James Frinzi." Adv. Docket No. 24-2 at 3-4; Adv. Docket No. 25-2 at 3-4. J.E. Goodman assumes this to be an error and that the Signal Subpoenas are intended to seek his personal information.

2

>through Signal Messenger, relating to Goodman Networks' petition for bankruptcy and its creditors.

Adv. Docket No. 24-2 at 8; Adv. Docket No. 25-2 at 8.

## ARGUMENT AND AUTHORITIES

The Signal Subpoenas are overbroad on their face and seek documents that are neither relevant to the claims asserted nor likely to lead to relevant information. The Signal Subpoenas also seek documents likely to be covered by the attorney-client privilege or entitled to work product protection. The Court should therefore quash the Signal Subpoenas.

### A. Legal Standard

A court **must** quash or modify a subpoena for production of records when it presents an undue burden or requires disclosure of privileged or other protected matter if no exception or waiver applies. Fed. R. Civ. P. 45(d)(3)(A)(iii). A party has standing to move to quash a subpoena to a non-party where the party has "a 'personal right or privilege with regard to the materials subpoenaed.'" *Clewett v. TXU Energy Retail Co., LLC*, No. 3:21-CV-0692-S, 2023 WL 6536148, at *2 (N.D. Tex. Jan. 30, 2023) (quoting *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)).

"Courts consider six factors when determining whether a subpoena presents an undue burden: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* Even if a subpoena is appropriately limited in time, if it is facially overbroad and fails to describe documents with sufficient particularity, it may present an undue burden. *Id.* (quashing subpoena for a party's cell phone records)*; see also Fuller v. Werner Enterprises, Inc.*, No. 3:16-CV-2958-BK, 2018 WL 10374819, at *2 (N.D. Tex. Apr. 24, 2018) (holding that a subpoena

3

presents an undue burden when it its facially overbroad). This is especially true when the subpoena would infringe on a party's personal and financial privacy. *See Clewett*, 2023 WL 6536148, at *2.

As an alternative to quashing a subpoena outright, upon a showing of good cause, a court can enter a protective order that prohibits the discovery sought or modifies the subpoena "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *see also Fuller*, 2018 WL 10374819, at *2 (modifying a subpoena for cell phone records to only the hours leading up to a car accident). Standing to seek a protective order is broader than standing for purposes of a motion to quash; "a party has standing to seek a protective order when the party asserts that the protective order should be issued because the subpoena seeks irrelevant information." *Quilling v. Erwin & Johnson, LLP*, No. 3:07-CV-1153-P, 2009 WL 10704320, at *3 (N.D. Tex. Dec. 15, 2009). "To determine whether the discovery request is likely to produce relevant information a [c]ourt must look at the request in conjunction with the parties' pleadings." *Id.*

In addition to quashing or modifying a subpoena that seeks irrelevant information or is overly broad, a subpoena should be quashed if it is not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Where subpoenas "are facially overbroad, unduly burdensome, and disproportionate to the needs of the case," a court may "exercise[] its discretion to quash them entirely" rather than simply issue a protective order. *Clewett*, 2023 WL 6536148, at *3.

### B. The Signal Subpoenas are Overly Broad and Seek Information that is Not Relevant to the Trustee's Claims

The Trustee seeks information that is irrelevant and not proportional to the claims and defenses in this case. The Signal Subpoenas include categories that have no subject-matter limitation at all or that have an overly broad subject matter. For example, Category No. 1 seeks "All communications between and among James Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman, and Shalom Auerbach by or through Signal Messenger." This topic is clearly overbroad on its face as it has no subject matter limitation at all. It is also a blatant attempt to infringe on J.E. Goodman's personal and financial privacy because it seeks three years' worth of communications between J.E. Goodman and his brothers.

For Categories 2 and 3, the Trustee made some effort to include a subject matter limitation but the topics are still overly broad and still attempt to infringe on J.E. Goodman's personal and financial privacy. Category 2 seeks all communications regarding a lengthy list of entities but has no limitation as to the topic of communications about those entities. For example, Category 2 would encompass a message from J.E. Goodman to one of his brothers regarding paying the AT&T telephone bill or a message from one brother to another about sending a package to a third brother using Federal Express. Category 3 is likewise impermissibly broad, seeking all communications "relating to the sale or purchase of stock, shares, bonds, or notes." Again, for example, this would pick up emails between the brothers regarding personal investment decisions that have nothing whatsoever to do with the Debtor. The remaining topics are likewise overbroad.

The Signal Subpoenas are facially overbroad and should be quashed. Alternatively, the Court should enter a protective order limiting the scope of the Signal Subpoenas to categories of communications that are relevant to the Trustee's claims in this proceeding.

5

**C. The Signal Subpoenas are Seek Information that is Potentially Privileged**

The Trustee also made no effort to ensure that no privileged information is obtained. The Signal Subpoenas require that the responsive documents be provided directly to the Trustee's counsel. Nothing in the Signal Subpoenas provides for review of responsive documents by the Defendants' attorneys to ensure that privileged matters are protected. The problem this potentially creates is particularly apparent with regard to Categories 6 and 7, which on their face seek communications regarding litigation with AT&T and this bankruptcy case through the present. *See* Docket No. 24-2 at 8 (seeking "all communications . . . relating to lawsuits filed by AT&T or Arris" and "all communications . . . relating to Goodman Networks' petition for bankruptcy and its creditors"); Adv. Docket No. 25-2 at 8 (same).

The Trustee cannot defeat J.E. Goodman's attorney-client privilege and work product protection, and Defendants' related right to communicate regarding pending litigation against them, simply by obtaining documents from a communications service provider, rather than from J.E. Goodman. The Court should quash the Signal Subpoenas to enforce the attorney-client privilege and work product protection. Alternatively, the Court should grant a protective order requiring the third parties to produce any responsive documents to counsel for Defendants to allow for a privilege review before the documents are provided to the Trustee's counsel.

**CONCLUSION & PRAYER**

The Signal Subpoenas should be quashed. They are facially overbroad and potentially cover communications protected by the attorney-client privilege and the work product doctrine. In the alternative, the Court should issue a protective order modifying the Signal Subpoenas such that they only seek communications relevant to this proceeding and so that counsel for Defendants are allowed to do a privilege review before documents are produced to the Trustee's counsel.

6

WHEREFORE, J.E. Goodman prays that the Court grant this Motion and quash the Signal Subpoenas or issue a protective order. J.E. Goodman further prays that he has and recovers all other relief, whether at law or in equity, to which he may be justly entitled.

    Respectfully submitted,

    **PULMAN, CAPPUCCIO & PULLEN, LLP**
    2161 NW Military Highway, Suite 400
    San Antonio, Texas 78213
    www.pulmanlaw.com
    (210) 222-9494 Telephone
    (210) 892-1610 Facsimile

    By:   */s/ Randall A. Pulman*
         Randall A. Pulman
         Texas State Bar No. 16393250
         rpulman@pulmanlaw.com
         Anna K. MacFarlane
         Texas State Bar No. 24116701
         amacfarlane@pulmanlaw.com

    **ATTORNEYS FOR JAMES E. GOODMAN**

4883-2500-8857, v. 2

**CERTIFICATE OF SERVICE**

I certify that on the **28th day of August, 2024**, I served the foregoing upon counsel for Plaintiff, Davor Rukavina via email drukavina@munsch.com and upon all counsel for Plaintiff via this Court's ECF notification system.

>                */s/ Randall A. Pulman*
> Randall A. Pulman